1 | Joe Angelo (Bar #268542)
2 | jangelo@gajplaw.com
  | Gale, Angelo, & Johnson, P.C.
3 | 2999 Douglas Blvd., Ste. 111
  | Roseville, CA 95661
4 | 916-290-7778 ph
  | 916-282-0771 fax
5 |
  | Attorneys for Plaintiff
6 | Bonnie Tanner

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| Bonnie Tanner<br><br>            Plaintiff,<br><br>  v.<br><br>Experian Information Solutions, Inc.; TransUnion, LLC; Select Portfolio Servicing, Inc.; Together Credit Union<br><br>            Defendants. | CASE NO.: 8:24-cv-01222<br><br>COMPLAINT FOR DAMAGES:<br><br>1. Violation of Fair Credit Reporting Act; |

COMES NOW Plaintiff Bonnie Tanner (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

## **INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, and t15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), and 15 U.S.C. §1681i(a)(5)(A)).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or

incomplete reporting of Plaintiff's accounts with Select Portfolio Servicing, Inc. (hereinafter "SPS") and Together Credit Union (hereinafter "Together").

3. Here, Together continues to report an outstanding balance on an unsecured account that was properly included and discharged in Plaintiff's chapter 13 bankruptcy proceeding.

4. Similarly, SPS continues to report a past-due balance on an account that was discharged through Plaintiff's bankruptcy proceeding.

5. Both SPS and Together had actual knowledge of both Plaintiff's bankruptcy filing and entry of the chapter 13 discharge but instead of updating the accounts both continued to report derogatory and inaccurate information.

6. Specifically, Together continues to report to Experian, LLC that nearly $1,600 is owed and past-due.

7. SPS continues to report to Experian that nearly $1,000 is owed and past-due and is reporting to TransUnion that the account was not included/discharged in bankruptcy.

8. Such reporting is wholly inaccurate, misleading, and adversely impacts Plaintiff's credit worthiness.

9. Plaintiff has been denied extensions of credit as a result of the Together and SPS tradelines.

10. Third parties have been exposed to the inaccurate tradelines.

11. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

## JURISDICTION & VENUE

12. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

13. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

14. The venue is proper pursuant to 28 U.S.C. §1391(b)(1).

15. Defendant TransUnion is a credit reporting agency that provides consumer information regarding consumers throughout the United States, including those located in the Central District of California.

16. Defendant Experian is a credit reporting agency that provides consumer information regarding consumers throughout the United States, including those located in the Central District of California. Experian's principal place of business is located within California.

17. Together is a credit union that maintains locations in the State of California.

18. SPS is a mortgage servicer that does business throughout the United States, including the State of California.

## GENERAL ALLEGATIONS

19. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for accurate credit reporting in an attempt to purposefully undermine Plaintiff's credit worthiness.

20. Together's inaccurate and incomplete reporting was an intentional act designed to pressure Plaintiff into making a nearly $1,600 payment on an account that Together otherwise knew was uncollectable due to the bankruptcy discharge.

21. Together's collection activity also runs afoul of various portions of the Bankruptcy Code.

22. Similarly, SPS continues to report inaccurate and incomplete information regarding the status of the discharged account.

23. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

24. FICO is a leading analytics software company with its principal headquarters located in Montana.

25. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

26. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

27. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan.

28. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

29. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900.

30. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

31. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

32. There are 28 FICO Scores that are commonly used by lenders.

33. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

34. The three largest CRAs are Experian Information Solutions, Inc.; Equifax Information Services, LLC, and Transunion, LLC.

35. FICO does not control what information is provided in a consumer's credit report.

36. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

37. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.

38. Each of the five factors is weighed differently by FICO.

39. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

40. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments.

41. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

42. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently they occurred, and how many delinquent accounts exist.

43. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

44. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.
45. A consumer's FICO score is negatively impacted when an adverse authorized user account is reported.

### Metro 2

46. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.
47. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format.
48. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt.
49. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.
50. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.
51. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.
52. The CDIA is *the* expert on accurate credit reporting. In support of his allegations Plaintiff avers the following:
    a. The CDIA offers a FCRA certificate program for all CRAs.
    b. The CDIA offers a FCRA awareness program for all CRAs.
    c. The CDIA offers a FCRA Certificate program for DFs.
    d. The CDIA offers a FCRA awareness program for DFs.
    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of

the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

    f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

    g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

53. The CDIA's Metro 2 is accepted by all CRAs.

54. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

55. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

56. The three main credit bureaus helped draft the CRRG.

57. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

58. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

59. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

### e-OSCAR

60. E-OSCAR is the web-based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax Information Services, LLC; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

61. When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.
62. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

### Consumer Information Indicator

63. When a consumer files for bankruptcy protection certain credit reporting industry standards exist.
64. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.
65. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.
66. Under Metro 2 the CII must be reported only on the consumer to whom the information applies.
67. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.
68. In the consumer bankruptcy context CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.
69. The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed but the chapter is undesignated/unknown.
70. The CII Metro 2 Code "H" denotes that a Chapter 13 bankruptcy has been discharged.
71. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

72. Failure to update the CII to a "H" on discharged debts results in it appearing that a consumer, like Plaintiff, still owes on the account that was otherwise included and discharged in a bankruptcy.

73. The result lowers a consumer's credit score and makes a consumer much less credit worthy.

### Plaintiff's Credit Report Disputes

74. Plaintiff filed for chapter 13 bankruptcy protection on August 20, 2018 and received her discharge on October 23, 2023.

75. In late 2023 Plaintiff became aware that Together and SPS, which were creditors included and discharged in October of 2023 through her chapter 13 bankruptcy proceeding, were both reporting a past-due balance instead of indicating the accounts were discharged.

76. Concerned, Plaintiff disputed the Together and SPS account with Equifax, Experian, and TransUnion in December of 2023.

77. Plaintiff believes that Experian, Equifax, and TransUnion forwarded her dispute to Together and SPS.

78. After the statutory timeframe passed for an investigation and updates to occur, Plaintiff ordered a second credit report to verify the requested updates were made to the SPS and Together accounts.

79. As of June 2024 Plaintiff's Together and SPS accounts continue to report inaccurate and incomplete account information and lacked any updates in response to Plaintiff's dispute.

### Inaccuracy – Together

80. Together continues to report the Plaintiff's account was not discharged in bankruptcy and is past-due with an outstanding balance.

81. Such reporting makes it appear that Plaintiff is still obligated to make payments on the Together debt and that the account was not included or discharged in bankruptcy.

82. Together has not updated the CII to reflect that the account was ever subject to the terms of Plaintiff's chapter 13 filing nor subsequently discharged.

83. Rather than update the CII to an "H" Together continues to report to Experian the account has a balance and past-due balance owed.

84. It appears that Together is still owed over $1,600 despite the debt being discharged.

85. Such reporting remains entirely inaccurate.

86. Such reporting also represents an attempt to collect, with those claims to be pursued in Plaintiff's chapter 13 bankruptcy case regarding violations of the automatic stay and discharge injunction.

**Willfulness**

87. Together had actual knowledge of the bankruptcy but refused to update the CII.

88. Such reporting was not the result of accident but instead a deliberate attempt to undermine Plaintiff's ability to discharge debt and repair her credit.

89. Together's reporting of the past-due balances, missed payments, and balance owed is an attempt to have Plaintiff make payments on the account in order to remove the derogatory and inaccurate account information.

**Inaccuracy – SPS**

90. SPS continues to report the Plaintiff's account was not discharged in bankruptcy and is past-due with an outstanding balance.

91. Such reporting makes it appear that Plaintiff is still obligated to make payments on the SPS debt and that the account was not included or discharged in bankruptcy.
92. SPS has not updated the CII to reflect that the account was ever subject to the terms of Plaintiff's chapter 13 filing nor subsequently discharged.
93. Rather than update the CII to an "H" SPS continues to report to Experian the account has a balance and past-due balance owed.
94. SPS continued to report to TransUnion that the account was not included/discharged in bankruptcy.
95. It appears that SPS is still owed over $700 despite the debt being discharged.
96. Such reporting remains entirely inaccurate.
97. Such reporting also represents an attempt to collect, with those claims to be pursued in Plaintiff's chapter 13 bankruptcy case regarding violations of the automatic stay and discharge injunction.

**Willfulness**

98. SPS had actual knowledge of the bankruptcy but refused to update the CII.
99. Such reporting was not the result of an accident but instead a deliberate attempt to undermine Plaintiff's ability to discharge debt and repair her credit.
100. SPS's reporting of the past-due balances, missed payments, and balance owed is an attempt to have Plaintiff make payments on the account in order to remove the derogatory and inaccurate account information.

**Damages**

101. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit worthiness, and emotional harm.
102. Plaintiff has been denied credit as a result of the Together and SPS reporting.

103. The inaccurate reporting has caused and continues to cause great emotional harm, stress, and anxiety.
104. In addition, Plaintiff's fresh start has been irreparably harmed and continues to be harmed by Together and SPS's reporting as that reporting has been disclosed and disseminated to various third-party lenders.
105. Until Together and SPS's reporting has been properly updated Plaintiff continues to appear a severe credit risk.

## FIRST CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants Experian and TransUnion)

**Experian and TransUnion – Failure to Assure Credit Reporting Accuracy.**

106. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.
107. Experian and TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.
108. Had Experian and TransUnion maintained reasonable procedures to assure maximum accuracy Equifax would never have allowed Together and SPS to report the accounts as described herein.
109. As a result of Experian and TransUnion's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, denial of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

110. Experian and TransUnion allowed the inaccurate information reported by Together and SPS to be transmitted to various third-party lenders, further damaging Plaintiff's credit.

111. The violations described herein by Experian and TransUnion were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

112. Here, Plaintiff's Experian and TransUnion credit reports reflect that Plaintiff filed for chapter 13 bankruptcy protection and received a discharge.

113. However, Experian and TransUnion continue to allow Together and SPS to report the accounts without any bankruptcy notation despite TransUnion and Experian being aware that Plaintiff successfully completed her chapter 13 proceeding.

114. Experian and TransUnion both do not have any system in place to flag and or identify obvious i.e. factually contradictory information being transmitted.

**Willfulness**

115. Consequently, Experian and TransUnion are liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

116. In the alternative Experian and TransUnion were at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

117. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

### SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendants)

**Together and SPS – Failure to Reinvestigate.**

118. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

119. 15 U.S.C. §§ 1681s-2(b) and 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

120. Defendants SPS and Together violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

121. Experian and TransUnion provided notice to SPS and Together and that Plaintiff was disputing the inaccurate and misleading information, but SPS and Together failed to conduct a reasonable investigation of the information.

122. Based on Plaintiff's dispute, SPS and Together should have known its accounts were included in Plaintiff's Chapter 13 discharge.

123. The most basic investigation would include a simple review of well-established credit reporting industry standards.

124. Plaintiff alleges SPS and Together did not review well established industry standards for credit reporting.

125. If SPS and Together had reviewed such standards both would have seen its reporting was not in compliance and consequently inaccurate and or incomplete.

126. Such an investigation would be unreasonable.

127. Plaintiff also alleges that SPS and Together did not investigate whether Plaintiff filed for bankruptcy and whether a discharge was entered.

128. The lack of investigation is unreasonable.

129. Plaintiff further alleges that SPS and Together has not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

**Experian and TransUnion – Failure to Reinvestigate Disputed Information.**

130. Plaintiff re-alleges and incorporate herein the allegations in each and every paragraph above as though fully set forth herein.

131. After Plaintiff disputed the accounts mentioned above, Experian and TransUnion were required to conduct a reasonable investigation and to delete any information that was not accurate under 15 U.S.C. § 1681i-(a)1.

132. Experian and TransUnion failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.

133. Experian and TransUnion could not have possibly done any type of reasonable investigation into this matter as Plaintiff explicitly explained that the Together and SPS accounts should be reporting as included/discharged in bankruptcy rather than past-due with a balance owed and charged-off.

134. Plaintiffs allege that Experian and TransUnion both have its own independent duty to conduct a reasonable investigation 15 U.S.C. § 1681i-(a)1.

135. Experian and TransUnion are not passive entities bound to report whatever information a data furnisher provides.

136. Given the aforementioned, Plaintiff alleges that Experian and TransUnion can and do suppress inaccurate information from being reported when data furnishers provide inaccurate information.

137. Experian and TransUnion can and do instruct data furnishers on how to properly report certain accounts from time to time upon request from the data furnisher.

138. Experian and TransUnion failed to conduct a reasonable investigation because any basic investigation would have included a review of Plaintiff's dispute letters.

139. Experian and TransUnion intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that Experian and TransUnion's general policy is to simply parrot whatever information a data furnisher sends.

140. Such policy and procedure inherently leads to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

## THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants Experian and TransUnion)

**Experian and TransUnion – Failure to Review and Consider All Relevant Information.**

141. Plaintiff reallege and incorporate herein the allegations in each and every paragraph above as though fully set forth herein.

142. Experian and TransUnion violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

143. As a result of Experian and TransUnion's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

144. The violations by Experian and TransUnion were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

145. In the alternative Experian and TransUnion were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

146. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants Experian and TransUnion)

**Experian and TransUnion – Failure to Delete Disputed and Inaccurate Information.**

147. Plaintiff re-allege and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

148. Experian and TransUnion violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

149. As a result of Experian and TransUnion's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

150. The violations by Experian and TransUnion were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

151. In the alternative, Experian and TransUnion were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

152. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of fact triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Award statutory and actual damages pursuant to 15 U.S.C. § 1681;
2. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;
3. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o;
4. For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
5. For determination by the Court that Defendants' policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Dated: June 6, 2024

Gale, Angelo, & Johnson, P.C.
*/s/ Joe Angelo*
Joe Angelo
Attorney for Plaintiff